**SIMONI, Appellee,**

v.

**SIMONI, Appellant.**

[Cite as *Simoni v. Simoni* (1995), 102 Ohio App.3d 628.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 66995.

Decided April 3, 1995.

*Fred P. Ramons* and *David E. Mack,* for appellee.

*Kaufman & Cumberland Co.* and *Gail E. Sindell,* for appellant.

HARPER, Judge.

Appellant, Frank A. Simoni, appeals from the division of marital property ordered by the Cuyahoga County Court of Common Pleas in a divorce adjudication filed by appellee, Mary Ann Simoni. For the reasons set forth below, we reverse and remand.

I

Appellant and appellee were married on November 7, 1964, and there were no children born in the marriage. At the time of the parties' divorce, appellant was sixty-eight years old, while appellee was sixty-seven years old.

Appellee filed for a divorce on April 13, 1992, alleging incompatibility. On February 11, 1994, the trial court granted the parties a divorce. The court filed its findings of fact in relation to its distribution of property based on the evidence presented as follows.

Both parties testified that they entered into an antenuptial agreement prior to their marriage. Appellant was represented by counsel, while appellee was not so represented. Both parties testified that appellee did not fill out an asset disclosure form. At the time of their divorce, they could not locate any copies of the antenuptial agreement.[1]

Appellant testified that the agreement was in his safe-deposit box and both parties had access to the box. When he went to the box to retrieve the document, it was missing. He charged that appellee was the last person to open the box before he discovered the document missing. Appellant admitted that he voluntarily transferred much of his premarital property into both of their names during the course of the marriage.

Appellee testified that appellant instructed his lawyer to destroy the document. Appellee stated that the instruction to destroy the document came when appellant asked her to cosign loans for him for use by American Commodore Tuxedo, a family-owned company in existence at the time of their marriage. She ques-

1. It is also noteworthy that the lawyer who drafted the agreement does not possess a copy.

tioned appellant's suggestion that she sign a loan, knowing that she did not have any interest in the company. She later signed the loan. Appellee testified that she opened the safe-deposit box but only to inventory the contents. She did not find any antenuptial agreement. Appellee testified that throughout most of the marriage, she worked at American Commodore Tuxedo as a paid employee.

Dick Valore, an attorney, testified that he prepared the couple's will and trust in 1979. He saw the antenuptial agreement, but could not recall whether the agreement addressed itself to the issue of divorce. He urged appellant to give stock of American Commodore Tuxedo to appellee and he refused. There was no mention of the antenuptial agreement in the will and trust prepared by Valore.

Dana Korosi testified that he had known the couple since 1972 or 1973, when his advertising firm did work for American Commodore Tuxedo. He also did estate planning for them in 1979. They did not, at any time, mention the existence of an antenuptial agreement. Korosi's intake form had questions about such documents on it, but no responsive result was recorded. He testified that such information was relevant and vital to an estate plan. He directed appellant and appellee to attorney Dick Valore, who helped them prepare some legal documents.

At the conclusion of all evidence, the trial court ruled that the antenuptial agreement was rescinded, which explained why the parties were unable to produce it during the divorce proceedings. The trial court made a property division without consideration to the nonexistent antenuptial agreement.

The court found the following to be marital property and divided it as such:

Appellee was awarded $700,000 for one half the stipulated value of American Commodore Tuxedo, payable at $70,000 per year for ten years; life insurance, subject to the debt to American Commodore Tuxedo for the premium; the IRAs in the sum of $53,779; the Gobal Fund in the amount of $6,642; the marital residence with a fair market value of $180,000; $185,131 from the sale of the Gates Mills lot; a condo at Cancun, Mexico, worth $110,000; a diamond ring worth $16,000; $43,570 from the marital savings; one half of the cemetery plots worth $17,063; the American Commodore Tuxedo loan in her name of $87,272; appellee's profit-sharing account of $14,742; and appellant's profit-sharing account of $103,324. Thus, the total award to appellee was $817,523 (excluding the one half stipulated value of American Commodore Tuxedo), which constituted one half of the entire marital property.

Appellant was awarded his life insurance, subject to the debt to American Commodore Tuxedo for premiums; $39,869 from the sale of the Gates Mills lot; $53,000 equity in a condominium he owns; a 1931 Ford automobile valued at $18,000; a 1957 Ford Thunderbird automobile valued at $43,000; a Strongsville

Partnership valued at $74,000; $23,570 of the marital savings; one half of the cemetery plots worth $17,063; the cash buyout of appellee's life interest in a Mayfield building worth $151,000; appellant's life interest in the Mayfield building worth $113,511; appellant's American Commodore Tuxedo loan of $278,110 and another loan of $6,400. The total award to appellant was also $817,523.

In addition to the equal division of the marital property, the trial court made the following award of spousal support to appellee: $42,000 for 1994; $36,000 for 1995; $30,000 for 1996; $24,000 for 1997; $18,000 for 1998; $12,000 for 1999; and $6,000 for 2000. The court also determined that appellee will earn interest and dividend income in the amounts of $49,000 in 1994; $54,000 in 1995; $60,000 in 1996; $66,000 in 1997; $72,000 in 1998; $78,000 in 1999; and $83,000 in 2000.

In awarding the spousal alimony, the trial court made the following findings and observations:

"The court finds that the standard of living of the parties in recent years has been luxurious, replete with substantial expensive gifts to each other, frequent entertainment and vacations.

"The court finds that the education of the parties is similar, and that neither contributed to the education of the other.

" * * * *

"The court further finds that the assets of the parties, upon division, will be identical in amount, if not kind, and that said assets are substantial and of themselves create income for the parties.

"While this sum of spousal support is in excess of Mrs. Simoni's claimed 'basic needs' in her pretrial statement, it does accurately reflect the income she was making when employed by Mr. Simoni, and will more accurately allow her to continue the lifestyle she enjoyed while married to Mr. Simoni. It should also provide that when her total assets invested are capable of fully supplying her needs, that spousal support should terminate."

## II

Appellant files the following errors for review:

"1. The trial court's finding that the parties' Antenuptial Agreement was rescinded 'sometime during the 1970s' is against the manifest weight of the evidence.

"2. The trial court's award of alimony to Mrs. Simoni constituted an abuse of discretion because:

"A. The trial court was obligated to enforce the provision in the parties' Antenuptial Agreement waiving all rights and claims to alimony, absent a showing of the unconscionability of this provision; or, alternatively,

"B. The trial court abused its discretion by incorrectly applying R.C. 3105.18 to the facts of the instant case, holding that the perpetuation of the marital standard of living as opposed to need was the primary criteri[on] for sustenance alimony.

"3. The trial court abused its discretion in awarding $700,000 to Mrs. Simoni as one half (½) the marital value of American Commodore Tuxedo.

"A. The trial court abused its discretion by failing to make a determination as to what amount of the value of American Commodore Tuxedo was marital in nature before allocating the value of this asset between the parties.

"B. The trial court abused its discretion by failing to correctly apply the standards set forth in R.C. 3105.171 to the appreciation in value of American Commodore Tuxedo during the course of the marriage."

█ In his first assignment of error appellant challenges the trial court's failure to apply the provisions of the nonexistent antenuptial agreement. Appellant argues that the trial court's finding is against the manifest weight of the evidence. We disagree. In *Karches v. Cincinnati* (1988), 38 Ohio St.3d 12, 19, 526 N.E.2d 1350, 1357, the Ohio Supreme Court held that:

" * * * In reviewing the court's judgment, we are guided by the principle that judgments supported by competent, credible evidence going to all the material elements of the case must not be reversed, as being against the manifest weight of the evidence, *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. Every reasonable presumption must be made in favor of the judgment and the findings of facts. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. Finally, if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment. * * * "

In the instant case, appellant argues in his brief:

"The antenuptial agreement provided, *inter alia*, that all property, real or personal, wherever situated, which belonged to Mr. Simoni before marriage, together with any subsequent reinvestment and increases in the value of such property or reinvested property, shall be and remain the separate personal estate of Mr. Simoni. * * * The antenuptial agreement also provided that, in the event of termination of the marriage by divorce, each party would waive his or her right to all claims to alimony or support from the other party. * * * "

Both parties admitted the one-time existence of the antenuptial agreement, but that was as far as their agreement went on the issue of an antenuptial agreement. There was no further agreement on the contents of the document, which leaves the court no choice but to resort to extrinsic evidence to determine what role, if any, the missing antenuptial agreement could play in its decision. The trial court is not bound to believe appellant's version of the contents of the antenuptial agreement, which was in dispute, without the benefit of viewing the four corners of the document in question.[2]

After listening to all the evidence, the trial court concluded the agreement was rescinded, based on the following events testified to by Mrs. Simoni and other witnesses. Mrs. Simoni testified that in the 1970s appellant asked her to sign loans to pay off the debts of American Commodore Tuxedo. She questioned these loans in light of the fact that the antenuptial agreement did not provide her with an interest in the company. She testified that appellant reacted to her concern by instructing his attorney to destroy the antenuptial agreement.

Dana Korosi testified that he did estate planning for the Simonis in 1978 or 1979 and that at no time did they mention the existence of an antenuptial agreement, which is very relevant and vital in estate planning. He testified that his intake form had questions about such documents, but he did not get a responsive answer from the Simonis.

Dick Valore testified that he saw the antenuptial agreement but did not recall whether the contract addressed itself to the issue of divorce.

The general principle of law on judging credibility is that the credibility of witnesses and the weight of the evidence are matters to be determined by the trier of facts. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. We are mindful of this rule and have found no reason in the record to reverse the trial court on manifest weight, and under the circumstances of this case the decision of the trier of facts (the judge) must be permitted to stand.

Accordingly, this argument is overruled.

Appellant further argues that the trial court abused its discretion by awarding appellee sustenance alimony, where the court failed to hold the antenuptial agreement provisions unconscionable. This argument has no merit. There is no antenuptial agreement, and, therefore, there is nothing to declare unconscionable.

---

2. This case is distinguishable from *Nighswander v. Nighswander* (Jan. 22, 1990), Seneca App. No. 13–87–2, unreported, 1990 WL 4242. In that case there was a physical document which one party argued was rescinded with a nonexistent second agreement.

The trial court's award of sustenance alimony was strictly based on its findings, which leads us to appellant's third challenge.

■■■ Appellant challenges the trial court's award of sustenance alimony without evidence of hardship demonstrated by appellee. Appellant's challenge has merit. When applying the factors listed in R.C. 3105.18 in determining the amount and extent of sustenance alimony, the trial court enjoys a tremendous power of discretion. However, this power of discretion is not unlimited, *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 355, 20 O.O.3d 318, 322–323, 421 N.E.2d 1293, 1298–1299, and is subject to appellate court reversal whenever abuse of discretion is found, *Ralston v. Ralston* (1989), 61 Ohio App.3d 346, 349, 572 N.E.2d 791, 793. See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142. In determining whether a trial court abused its discretion, the reviewing court considers the totality of the circumstances before arriving at a decision to reverse the trial court judgment. See *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 131, 541 N.E.2d 597, 599–600. When a trial court is faced with the challenge of awarding a sum-certain as sustenance alimony or dividing marital property in a divorce proceeding, it is guided by law (R.C. 3105.18), but controlled by equity. *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83, 86–87; *Wolfe v. Wolfe* (1976), 46 Ohio St.2d 399, 75 O.O.2d 474, 350 N.E.2d 413; *Buckles v. Buckles* (1988), 46 Ohio App.3d 102, 546 N.E.2d 950.

Equity forces the court to put the parties on parity, but whenever equity loses its existence, justice is denied. The denial of justice in any way scorns the very cornerstone of our democratic existence, which is firmly rooted in the rule of law that justice should always prevail.

In the instant case, the trial court divided the marital property equally, giving each party $817,523. The court in addition to equal property division awarded appellee sustenance alimony for seven years in the total amount of $168,000. The trial court made the sustenance award in spite of the following observations and findings:

"The court further finds that upon division of assets, both parties will have ample retirement assets.

"The court further finds the duration of the marriage to be 29 years, and there are no minor children of the marriage.

"The court further finds that the standard of living of the parties in recent years has been luxurious, replete with substantial expensive gifts to each other, frequent entertainment and vacations.

"The court finds that the education of the parties is similar, and that neither contributed to the education of the other.

*"The court further finds that the assets of the parties, upon division, will be identical in amount, if not kind, and that said assets are substantial and of themselves create income for the parties.*

"The court further finds given the age of the plaintiff, it is not feasible to consider the time and expense necessary to 'retrain' her for further employment.

"The court further finds that spousal support has been calculated as follows:

"(1) Mary Ann's Social Security—$9,900 ($4,950 taxable)

"(2) Assuming that Frank Simoni liquidates his 'debt' to Mrs. Simoni (for her share in the company) at $70,000.00 per year for 10 years and including only those other items of property settlement which are liquid, or which without tax consequences, may be made liquid; and assuming a rate of return of 8% and no invasion of principal, Mrs. Simoni should have interest and dividend income as follows:

"Year # 1 - $49,000 (1994)
"Year # 2 - 54,000
"Year # 3 - 60,000
"Year # 4 - 66,000
"Year # 5 - 72,000
"Year # 6 - 78,000
"Year # 7 - 83,000

"Plaintiff Mary Ann Simoni, in order to duplicate her present style of living, needs $100,000 *gross* per year. Hence in year one, she will need $42,000 spousal support, $36,000 in the second year, $30,000 in the third year, $24,000 in the fourth year, $18,000 in the fifth year, $12,000 in the sixth year and $6,000 in the seventh year. In the eighth year, she should have Social Security and interest income sufficient to support her lifestyle. Such support order should be under the continuing jurisdiction of the court to adjust for the *realities* of the investments and/or Mr. Simoni's retirement, and at the conclusion of the seventh year to determine the need, if any, for further spousal support.

*"While this sum of spousal support is in excess of Mrs. Simoni's claimed 'basic needs' in her pretrial statement,* it does accurately reflect the income she was making when employed by Mr. Simoni, and will more accurately allow her to continue the lifestyle she enjoyed while married to Mr. Simoni. It should also provide that when her total assets invested are capable of fully supplying her needs, that spousal support should terminate." (Emphasis added.)

After reviewing the trial court's reasons for awarding the sustenance award, it is our opinion that the trial court went too far.

The Ohio Supreme Court held in *Kunkle* that:

"In Ohio, terminating a marriage is often approached by the courts as a dissolution of a partnership and '[o]nly after a division of property is made, is the

court statutorily authorized to consider whether an additional amount *is needed* for sustenance, *and for what period will such necessity persist.*

" 'Any grant of "alimony" for sustenance is necessarily co-extensive with the court's determination that it is *needed* and *warranted.* * * * ' (Emphasis added.) *Wolfe, supra,* at 414, 75 O.O.2d at 482, 350 N.E.2d at 423.

"Hence, it follows that a trial court must determine whether there is a need for sustenance alimony, and, if so, the amount needed and the duration of the need. Need is '[a] relative term, the conception of which must, within reasonable limits, vary with the personal situation of the individual employing it. [The] [t]erm means to have an urgent or essential use * * *.' Black's Law Dictionary (5 Ed.1979) 929." *Id.,* 51 Ohio St.3d at 68–69, 554 N.E.2d at 88.

The court continued:

"Literally construed, R.C. 3105.18(A) and (B) provide a trial court with broad discretion in awarding alimony based on the payor's ability to pay and the payee's need. However, this statutory scheme does not allow a court to fine, penalize or reward either party at the time of the divorce decree. See *Campbell v. Campbell* (1968), 17 Ohio App.2d 87, 46 O.O.2d 101, 244 N.E.2d 525.

"As this court has noted on numerous occasions, '[w]hile we recognize that " * * * [n]either party should make a profit at the expense of the other * * *," *Cherry, supra,* at 355, 20 O.O.3d at 322, 421 N.E.2d at 1299, we do not interpret R.C. 3105.18 to require an alimony award that provides the parties with an equal standard of living or a standard of living equivalent to that established during the marriage. *Sustenance alimony is based on need * * *.' "* (Emphasis added.) *Id.,* 51 Ohio St.3d at 70, 554 N.E.2d at 89.

In the instant case, the closest the trial court came to determining need was its mention of the duration of the marriage. The court ignored one fundamental factor necessary in finding "need," which is that the payee spouse must lack self-support. Where the record shows that the payee spouse is capable of supporting self, then the "need" element is lacking and sustenance alimony becomes unwarranted.

■ We do not share the trial court's opinion that a spouse is entitled as a matter of law to a continuous luxurious lifestyle, as lived by the parties during marriage.[3] Such reasoning does not comport with the Ohio Supreme Court decision in *Kunkle,* and such a guarantee by a court of law would not be readily attainable in our current social and economic conditions.

---

**3.** A prior lifestyle could be considered by the court, but there is no requirement that it must be duplicated.

The trial court acknowledged that both parties have substantial income-creating assets and that appellee would receive about $49,000 in income in 1994, but insisted, however, that appellee duplicate the lifestyle she lived prior to the divorce. The court, in an attempt to place appellee in status quo ante, completely ignored appellee's own claimed "basic needs" and fashioned its own need for appellee, in excess of what appellee thought necessary for her sustenance. We cannot find a legal justification for such a windfall. See *Spychalski v. Spychalski* (1992), 80 Ohio App.3d 10, 608 N.E.2d 802.

After a thorough review of the record, we find that, based on the division of marital property, as it stands, appellee has the resources, abilities and potential to become self-supporting. If we allow the trial court's reasoning to stand, we would unnecessarily, but significantly, eliminate the necessity to establish certain elements necessary for an award of sustenance alimony.

We believe that such deviation would add more confusion to an already difficult area of the law and to personal disputes that are becoming increasingly difficult to resolve. Appellee, thus, has failed to demonstrate that she has a need to live a luxurious lifestyle far beyond her income.

Accordingly, we sustain appellant's argument as we find it has merit.

### III

■ Appellant argues in his second assignment that the trial court abused its discretion by awarding one half of the value of American Commodore Tuxedo to appellee as marital property. Appellant argues that the trial court mistakingly declared the total stipulated value of American Commodore Tuxedo as a marital property.

R.C. 3105.171(A) provides that the court will distribute a spouse's separate property to that spouse, except for the income and/or appreciation of that separate property due to labor, monetary, or in-kind contribution of either spouse during their marriage. R.C. 3105.171(A)(3)(a) defines "marital property" as:

"(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

" * * *

"(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage[.]"

R.C. 3105.171(A) provides further as follows:

"[3](b) 'Marital property' does not include any separate property.

"(4) 'Passive income' means income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse.

"(5) 'Personal property' includes both tangible and intangible personal property.

"(6)(a) 'Separate property' means all real and personal property and any interest in real or personal property that is founded by the court to be any of the following:

"(i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;

"(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;

"(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage[.]"

█ Thus the guideline for establishing what is marital property and what is not marital property is statutory and must be followed by the court in its determination. In the instant case, it is undisputed that American Commodore Tuxedo was appellant's separate property before the marriage. Appellee admitted that appellant declined to give her any interest in the company. Valore testified that he had urged appellant to give appellee American Commodore Tuxedo stock, and that he had refused. The record also indicates that appellee was employed in the business and rose to a position of a director. The business also increased from five stores to twenty during their marriage. The record shows that appellee has expended time and effort in improving American Commodore Tuxedo, including signing loans on behalf of the corporation.

█ Separate property in Ohio does not automatically become marital property because one spouse contributed to an appreciation of the property. However, where marital assets are invested in separate property over the years, and the parties expend time and effort in improving the business, it would not be an abuse of discretion for the court to declare the property a marital asset. See *Guziak v. Guziak* (1992), 80 Ohio App.3d 805, 610 N.E.2d 1135; *Jelen v. Jelen* (1993), 86 Ohio App.3d 199, 620 N.E.2d 224. But whether such investments were made is a fact, which must be shown on the record and not by the mere fact that the parties were married. Where no actions were taken during the marriage to change separate property into marital property, *Moore v. Moore* (1992), 83 Ohio App.3d 75, 613 N.E.2d 1097, the other spouse is only entitled to share in appreciation of the other spouse's separate property where she contributed substantial work to improving and maintaining the property. *Worthington v. Worthington* (1986), 21 Ohio St.3d 73, 76, 21 OBR 371, 373–374, 488 N.E.2d 150,

153–154; *Baker v. Baker* (1992), 83 Ohio App.3d 700, 615 N.E.2d 699; *Wolfe, supra.*

In the instant case, appellee's argument that it is impossible to trace the portion of American Commodore Tuxedo attributable to appellant's premarital days is unpersuasive. The record does not state that any effort was made to determine such value. This court is well aware that there are experts whose job it is to make such determinations where both parties fail.

While we believe that there may be evidence to show appreciation of value in American Commodore Tuxedo as result of appellee's efforts, we must reverse this cause for a proper determination of such value. The record does not support the trial court's decision that the entire value of American Commodore Tuxedo is marital property.

In summary, we reverse the judgment of the trial court as it pertains to the classification of the entire value of American Commodore Tuxedo as marital property. That issue is remanded to that court to determine the value of the appreciation of American Commodore Tuxedo, if any, attributable to the joint efforts of the parties through significant funds, labor or in-kind contributions expended to improve and maintain the corporation that could rightfully be considered marital property.

The trial court's judgment pertaining to sustenance alimony is also reversed. We notice that the change in marital property may or may not cause any change in the award of sustenance alimony. However, that court must follow the guidelines enunciated by this court in determining what constitutes "need" for the purpose of sustenance alimony award.

This cause is reversed and remanded for further determination consistent with this opinion.

*Judgment accordingly.*

SPELLACY, P.J., and MATIA, J., concur.