JOURNAL ENTRY AND OPINION
This is an appeal from a judgment of divorce entered by Domestic Relations Judge Timothy M. Flanagan after trial before Magistrate Ann Weatherhead. Appellant Delma Keresztesi, n.k.a. Benedetti, argues it was an abuse of discretion to award appellee Steven Keresztesi, the full amount remaining from his permanent, total disability workers' compensation award and other assets. She also contends she should have been awarded spousal support and, because she was in danger of losing her own disability payments, it was error to deny her motion to reopen testimony to reconsider the issue of spousal support. We disagree and affirm.
The parties married by common law on July 1, 1978 and no children were born of the union. In September of 1978, Keresztesi sustained a work-related injury and began receiving temporary workers' compensation benefits. Ten years later, the benefits were changed from temporary to permanent, total disability. In the year prior to the stipulated date of separation, October 30, 1995, Keresztesi intermittently left and returned to the marital home. In January 1995 the couple's Parkland Oval residence was sold and Benedetti placed all the household furniture in storage, except for a 55" Hitachi television and an antique pool table which Keresztesi retained. The proceeds from the sale became the down payment for the purchase of a home located on Boneta Road in Medina. In July 1995, Keresztesi received a lump sum payment of $95,000 and his benefits terminated.
On December 13, 1995, Benedetti filed this divorce complaint to which Keresztesi filed an answer and counterclaim. Benedetti moved into the Boneta Road home in January 1996. In late 1996, Keresztesi was convicted of a crime and incarcerated but, nevertheless, continued to be represented by a lawyer thereafter, including the trial dates of April 30, 1997 and June 25, 1997.
Benedetti testified that, during the term of their marriage, her two children from a previous marriage resided with them. For a time, her former husband failed to pay her child support and she used marital funds to support them. In December 1998, however, she received a lump sum I.R.S. intercept check in the amount of $11,127.50 which she said she used to pay off personal loans and to install a new $5,000 driveway at the Parkland Oval address.
Benedetti had worked for Milk Marketing for 19 years until 1994 when she injured her hip in a motorcycle accident and was placed on disability. She indicated that she would be eligible for her pension in 2016. She also began contributing to a 401K account in 1989, and rolled it over into a Vanguard account when she left Milk Marketing. She stated she withdrew the entire $32,127 from the account in March 1996, and it was stipulated that she paid $9,847 in income tax because of that withdrawal.
It was stipulated that $86,000 of Keresztesi's 1995 workers' compensation award remained because he withdrew $9,000 immediately after the award was deposited by him into the parties' joint checking account. Further, in August 1995, $7,000 of that sum was used for appliances, carpet and tile for the Boneta Road home, and $500 for repairs to Benedetti's car. Of the remaining funds, Benedetti testified that $12,500 was spent towards living expenses and marital debts and she purchased a $40,000 CD and a $25,000 CD, both of which she placed in her grandson's name. She admitted, after she had learned that the court had entered a restraining order against the dissipation of marital and other funds, cashing in the $40,000 CD and spending the proceeds. Benedetti explained that the $25,000 CD remained in a guardian account for her grandson.
The magistrate issued her decision on August 1, 1997, and, after various extensions, Benedetti filed her objections on March 30, 1998, and Keresztesi filed his objections on April 10, 1998. On July 1, 1998, the judge overruled Benedetti's objections, sustained those of Keresztesi and referred the matter to the magistrate for an amended/supplemental decision. On November 10, 1998, the magistrate filed her amended decision which provided for the property and spousal support award as follows:
Finding of Fact [on the 401(K)/Vanguard account]:
 The plaintiff testified that she contributed to a 401(K) plan beginning in 1989 through her employment with Milk Marketing, and that the funds in this account were transferred to a Vanguard Group account in 1993 or 1994 when she went on disability. The parties verbally stipulated that in 1996 the Plaintiff withdrew $32,127 from the Vanguard account which the plaintiff testified represented the 401(K) account. She further testified that this withdrawal represented the total amount of proceeds from the 401(K), and that she did not consult with the Defendant with regard to the withdrawal or use of those funds.
Conclusion of law:
 The 401(K) account was earned during the marriage and so represents a marital asset. The Defendant is entitled to one half of $32,127, or $16,063.50.
Finding of Fact [on the workers' compensation award]:
 The parties have stipulated in Joint Exhibit 1 that Mr. Keresztesi received a permanent total worker's compensation award of approximately $86,000 in July of 1995, and that they separated October 30, 1995. Note: The Plaintiff testified that the parties actually received $95,000 and that the Defendant took $9,000 on the day he received the award and deposited it into the parties['] joint checking account. The Magistrate finds that this $9,000 has been commingled with marital funds and is not traceable to separate property.
 The Plaintiff testified that the injury to the Defendant which gave rise to this award took place in September of 1978, that Mr. Keresztesi went on temporary disability in 1978, and that it took ten years for him to be awarded permanent disability.
Conclusion of law:
 Since the worker's compensation award appears to represent an award for future earnings, and since the parties separated approximately four months after the award, the Magistrate finds that the worker's compensation award of $86,000 is the Defendant, Mr. Keresztesi's separate property, however some of that property has been commingled with marital property and is not susceptible of being traced.
The decision also recounted the amounts placed into the certificates of deposit, the carpeting and appliances for the home, the automobile repair, and remaining $12,500 for living expenses. As a matter of law, the magistrate concluded that the remaining $25,000 certificate of deposit and the $40,000 from the other certificate of deposit were Keresztesi's separate property. Because the remaining $21,000 was commingled with marital funds and used for household purchases during the marriage, she concluded that it could not be traced and, therefore, lost its identity as separate property.
With regard to the home on Boneta, the magistrate noted that the parties stipulated to one mortgage with an amount remaining to be paid of approximately $80,000. They agreed that the fair market value of the home is $195,000 with equity of $115,000. The parties also stipulated that $35,661.46 of the down payment and additional costs for the Boneta Road home came from Benedetti's separate property.
The magistrate summarized the total property as follows:
 Equity in residence $115,000.00 401K to Vanguard 32,127.00 Husband's IRA 2,100.00 Wife's IRA 9,970.32 C/D to grandson 40,000.00 C/D to grandson 25,000.00
Total: $224,197.32
The magistrate also concluded that the following constituted separate property:
 Husband's separate property $64,000.00 Wife's separate property 35,661.46
Total separate property $99,661.46
After subtracting the total separate property, the total marital property equaled $123,535.86. The magistrate then made the following award:
 Husband: Half of marital property $61,767.93 Separate property 65,000.00
Total to H: $126,767.93
 Wife Half of marital property $61,767.93 Separate property 35,661.46
Total to W: $97,429.39
The magistrate also recommended that Benedetti retain possession of the Boneta home but only until Keresztesi is released from prison or until the house is sold, whichever occurs first. During the time she retains possession, Benedetti would be required to make all mortgage, real estate tax, and home owner's insurance payments and be restrained from further encumbering the property.
 Upon the defendant's release from incarceration, the house shall be listed for sale and sold. The Defendant-husband shall receive the first $115,000 of the net proceeds of the sale of the home, ie. [sic] after the mortgages, and the costs of sale. Any deficiency in the mortgage due to that point and any unpaid real estate taxes shall be the Plaintiff-wife's responsibility. The $115,000 sum consists of $65,000 as the Defendant-husband's separate property, $16,063.50 as the Defendant's half of the 401(K) which was deposited into the Vanguard Account, plus $33,936.50 as part of his half of the marital property. Should there be less than $115,000 in net proceeds realized from the sale of the home a judgment shall issue against the Plaintiff-wife in favor of the Defendant-husband for the shortfall.
 Any balance remaining after these disbursements shall be divided equally. The purpose of dividing the remaining balance equally is to provide each party the enhanced value of their separate property. The magistrate takes note that the home will increase in value by virtue of the Plaintiff's payments of the mortgage and routine maintenance during the time the Defendant is incarcerated, however the Magistrate concludes that it is equitable to allow the Defendant to share in any increase in equity since the Plaintiff violated a restraining order when she withdrew the funds from the Vanguard account.
 Should the Plaintiff chose the [sic] sell the home before the Defendant's release, the same division of funds shall take place.
With regard to I.R.S. intercept check of $11,127.50, the magistrate concluded that it probably constituted separate property but, it was spent before filing for divorce, and the issue need not be reached. Regarding the $5,000 Benedetti paid from the support arrearage to repair the driveway, the magistrate concluded that [a]bsent evidence of how much the work on the driveway increased the value of the home, if any, * * * these funds are commingled with the marital funds used to maintain the house and are not susceptible to being traced.
Finally, addressing Benedetti's request for spousal support, the magistrate addressed the factors contained in R.C. 3104.18(C)(1)(a) as follows:
 a) [Benedetti] is not employed outside the home and receives disability payments in the amount of $1800 per month which, she testified, barely gets her through the month. Her pre-trial statement lists monthly expenses totaling $1893.97. The Defendant is incarcerated and therefore has no income and no expenses.
 b) Neither party has a good earning ability. Currently the Defendant is incarcerated and therefore he has no earning ability. The Plaintiff receives disability payments of $1800 per month and no evidence was presented that this situation was likely to change. The Plaintiff probably has the greater earning ability based on the fact that she is not incarcerated and no evidence was presented that she has a criminal record. When he is released Mr. Keresztesi's record is likely to hinder his employment prospects.
 c) The plaintiff's date of birth is September 24, 1945 [sic]. On the date of the divorce hearing she was 51 years old. The defendant's date of birth is September 13, 1947. On the date of the divorce the Defendant was 49 years old. No testimony was elicited that either party's physical, mental or emotional conditions would prevent him or her from gainful employment.
 d) The plaintiff testified that she earned a pension through her employment with Milk Marketing. The parties own IRAs * * *.
 e) The parties were married from July 1, 1978 to November 13, 1995, a period of more than seventeen years.
f) The parties have no minor children * * *.
 g) Minimal evidence was presented with regard to the parties' standard of living. They have stipulated that the fair market value of the marital home was almost $200,000 but there is no evidence that either had a consistently high income.
 h) No evidence was presented regarding the parties' level of education.
 i) The parties assets and liabilities are set forth in the division of property, above.
 j) No evidence was presented that either party contributed to the training of the other.
 k) No evidence was presented that the Plaintiff seeks to further her education in order to enhance her earning ability.
 l) Spousal support is taxable to the recipient and deductible to the payor.
 m) No evidence was presented regarding any lost income production capacity of the Plaintiff resulting from her marital responsibilities.
In her conclusion of law, the magistrate noted that Keresztesi's prospects for employment were non-existent in the short term and not much brighter in the longer term. While the marriage was of moderately long duration, Benedetti presented insufficient evidence to warrant either an award of spousal support or the court's reservation of jurisdiction on the issue.
After an extension, Benedetti filed her objections and a motion to reopen case on December 24, 1998. In her motion, she contended that she was in danger of losing her disability benefits and, therefore, the question of spousal support should be revisited. On January 22, 1998, the judge denied the motion to reopen case. On February 2, 1999, he overruled her objections and ordered Keresztesi's attorney to prepare an order reflecting the amended magistrate's decision. Keresztesi submitted the proposed entry on February 24, and the judge entered the order on March 4, 1999. Benedetti filed her notice of appeal on July 2, 1999 which this court determined was timely pursuant to Civ.R. 58(B) an App.R. 4(A). Keresztesi did not file an appellee's brief.
Benedetti's first and second assignments of error address common issues of fact and law which we will address together:
 I. THE COURT ERRED AND ABUSED ITS DISCRETION AND ACTED CONTRARY TO LAW IN ITS DIVISIN [sic] OF MARITAL PROPERTY.
 II THE COURT ERRED AND ABUSED ITS DISCRETION AND ACTED CONTRARY TO LAW IN ITS CHARACTERIZATION OF THE WORKER'S COMPENSATION AWARD AS SEPARATE PROPERTY.
Benedetti argues it is an abuse of discretion: 1) to burden her with all mortgage, insurance, and tax payments on the Boneta Road home until it is sold and then deny her the credit for those amounts or the enhancement in value at the time of sale; 2) to fail to take into consideration the uncontroverted evidence of Keresztesi's marital assets, 55" Hitachi television worth $2,500 and a drag bike that cost $3,500 but which she valued at between $40,000 to $50,000; 3) to find that the stipulated amount withdrawn from her Vanguard 401K account was $32,127 rather than $28,000 and not make an adjustment for the income taxes paid on that withdrawal; 4) to fail to recognize as her separate property the 1988 child support arrearage of $11,000 and award her that amount because she spent that money on marital obligations; 5) to ignore a $1,700 storage expense she incurred before moving into the Boneta Road home and; 6) to incorrectly characterize Keresztesi's workers' compensation award as his separate property because the injury for which he received the award occurred during the marriage, there was no evidence that the award was to compensate for future lost earning and, therefore, because the marriage ended on April 30, 1997, two years after the award of the funds there should have been an allocation of the award between the two parties.
We first note that Benedetti failed to file a transcript of the proceedings before the magistrate along with her objections to the magistrate's decision. Civ.R. 53(E)(3)(b) provides as follows:
 Objections shall be specific and state with particularity the grounds of objection. * * * Any objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of that evidence if a transcript is not available. A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule.
Because Benedetti failed to provide the judge with a copy of the transcript to support any of her objections, our review is limited to determining whether there was an abuse of discretion in adopting the magistrate's amended report without reference to the transcript submitted with the appellate record. State ex rel. Duncan v. Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728, 730, 654 N.E.2d 1254, citing High v. High (1993), 89 Ohio App.3d 424, 427, 624 N.E.2d 801, 802-803; Civ.R. 53(E)(6); Proctor v. Proctor (1988), 48 Ohio App.3d 55, 548 N.E.2d 287; see, also, Purpura v. Purpura (1986), 33 Ohio App.3d 237, 515 N.E.2d 27. When applying this abuse of discretion standard, we look to whether the trial court's application of the law to its factual findings constituted an abuse of discretion. Duncan, supra, citing Krause v. Krause (Apr. 27, 1995), Cuyahoga App. No. 66809, unreported. Therefore, to the extent Benedetti relies upon evidence from the hearing transcript which she did not provide for the judge to consider in ruling on her objections, her argument must fail. Duncan, supra.
Turning now to the items of property at issue, R.C. 3105.171(B) requires the judge to determine what constitutes marital property and what constitutes separate property. Marital property includes, inter alia, real and personal property acquired by either or both of the spouses during the marriage. R.C. 3105.171(A)(3). During the marriage is defined as the period of time from the date of the marriage through the date of the final hearing * * * or, if the court determines that using either of these dates would be inequitable, the period of time between those dates selected and specified by the court. R.C. 3105.171(A)(2). After determining what constitutes marital property acquired during the marriage, a judge must then divide the property equally or, if an equal division would be inequitable, in a manner that he determines would be equitable. R.C. 3105.171(C); see Zeefe v. Zeefe (1998),125 Ohio App.3d 600, 609. In order to determine what would constitute an equitable division of property, a judge should first determine the value of the marital assets. Allen v. Allen (1996), 109 Ohio App.3d 640, 642; Strong v. Strong (Nov. 25, 1998) Cuyahoga App. No. 73670. He has broad discretion when determining the value of a marital asset and is not required to use a particular method of valuation. James v. James (1995),101 Ohio App.3d 688, 689.
The task of a reviewing court is to determine whether a judge abused his discretion in arriving at a particular valuation. Id. An abuse of discretion connotes more than an error of law or of judgment: it implies that a judge held an unreasonable, arbitrary, or unconscionable attitude. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
Any objection to the valuation used by a judge would go to the weight of the evidence. See Strong, supra. When considering the weight and credibility of the evidence, a reviewing court must determine whether the judgment is supported by some competent, credible evidence that goes to support all the essential elements of the case. Id. Credibility of witnesses and the weight given to evidence are matters to be determined by the trier of fact. Simoni v. Simoni (1995), 102 Ohio App.3d 628, 634, appeal not allowed (1995), 73 Ohio St.3d 1453. This court will not substitute its judgment for that of a judge on matters of credibility.
First, we cannot find an abuse of discretion to require Benedetti to pay the expenses of maintaining the marital home, without crediting her with such expenses, while she inhabits the home during the time Keresztesi finishes his term in prison or until the house is sold, whichever occurs first. Because she has the sole use and benefit of the home, she could reasonably be required to pay these expenses. Moreover, as the magistrate's decision pointed out, Benedetti admitted cashing in her Vanguard account despite knowledge of the court order restraining the dissipation of any marital assets.
On the issue of the valuation of the motorcycle and the 55" Hitachi television, there is nothing in the magistrate's decision acknowledging either the existence or value of these items, other than the general disposition that the parties would retain personal items in their possession. Applying the standard of review in Duncan, supra, we cannot conclude an abuse of discretion in awarding each party the property currently in the possession of each.
The magistrate's decision noted that the parties stipulated, on the record, to a value of $32,127 for the 401(K)/Vanguard account. Applying Duncan, Benedetti's factual assertion to the contrary must fail. In any event, because she did not object below to the valuation of the account or the magistrate's failure to allocate the taxes she had paid when she closed the account, this issue is not properly before this court for its review. Civ.R. 53(E)(3)(b).
We also find no abuse of discretion in not finding, as separate property and setoff from the marital assets, the $11,127.50 Benedetti received for the child support arrearage. At least one court has considered child support and child support arrearage from a previous marriage as an interest in personal property acquired by one spouse prior to the date of subsequent marriage and, hence, as separate property. Brown v. Brown (Dec. 12, 1995), Franklin App. No. 95APF06-819, unreported. While the commingling of separate and marital property does not destroy the identity of the separate property if the separate property is traceable, R.C. 3105.171(A)(6)(b), the party seeking to establish an asset or portion thereof as his or her own separate property has the burden of proof by a preponderance of the evidence. Peck v. Peck (1994), 96 Ohio App.3d 731, 734, 645 N.E.2d 1300. We cannot conclude it was error to adopt the magistrate's conclusion that the child support funds were untraceable. As the magistrate noted, while Benedetti attributed $5,000 of that money to driveway repairs at the Parkland Oval residence, that asset was sold, and she failed to show how that expenditure otherwise increased the value of the home and how that increase was reflected in the proceeds upon the sale. It was clear the remaining $6,127.50 was untraceable and, therefore, we cannot find that the failure to consider this money as separate property an abuse of discretion.
Benedetti's argument about the $1,700 storage fee also fails because, under Duncan, the magistrate's decision does not mention the storage fee.
Finally, we also cannot find an abuse of discretion in determining that $65,000 of Kereszetesi's $95,000 workers' compensation permanent total disability award constituted his separate property. Permanent total disability is the inability to engage in sustained remunerative employment. State ex rel. Gemind v. Indus. Comm. (1998), 82 Ohio St.3d 457,460, 696 N.E.2d 1025. Marital property does not include compensation to a spouse for a personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets. Hartzell v. Hartzell (1993), 90 Ohio App.3d 385, 629 N.E.2d 491, citing R.C.3105.171(A)(6)(a)(vi). Therefore, [w]orkers' compensation benefits which compensate for expenses paid from marital assets are also divisible upon divorce. Workers' compensation benefits which compensate for the loss of a body part or for the loss of the worker's future earning capacity are not marital property and are not divisible upon the worker's divorce. Id.
Sixty-five thousand dollars ($65,000) of the award was directly traceable to the two certificates of deposit and the rest allocated to both the maintenance of the marital home or the payment of living expenses and marital debts. Nothing in the magistrate's decision shows any additional loss of marital earnings and or other expenses related to Keresztesi's jury that were paid from marital assets. We find no error in awarding Keresztesi, as his separate property, the $65,000 remaining from the workers' compensation award. Benedetti's first and second assignments of error are overruled.
We also address Benedetti's third assignment and fourth assignments of error together:
 III. THE COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO AWARD PLAINTIFF SPOUSAL SUPPORT.
 IV. THE COURT ERRED AND ABUSED ITS DISCRETION IN DENYING PLAINTIFF'S MOTION TO REOPEN [THE] CASE.
She asserts the evidence showed she was barely making it on her own $1,800 monthly disability benefits while Keresztesi resides in the state prison with no expenses. She contends she should have been awarded a lump sum spousal support payment because his unemployment is voluntary while hers is involuntary. Additionally, she submits, in light of her risk of losing her monthly disability income, and because her income and ability to support herself was an issue, the judge should have reopened the case to reconsider the property division.
We cannot find an abuse of discretion in declining to award spousal support. Section 3105.18(C)(1) of the Revised Code sets forth the following factors for a judge to consider when determining whether such support is appropriate:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
First, we note that Benedetti has failed to cite any authority to support her assignments of error. The magistrate concluded, although neither party's prospects were good, that Benedetti was in a better position to obtain employment. Interestingly, Benedetti does not challenge any of the magistrate's conclusions regarding the factors above nor did she contend below, or here, that she is in a position which would prevent her from obtaining gainful employment. Rather, her entire argument is based upon the $93.97 monthly difference between her $1,800 income and expenses. We cannot say that this, standing alone, is enough to show an abuse of discretion.
Similarly, we cannot conclude it was an error to deny Benedetti's motion to reopen the hearing. In a letter attached to her motion, the Social Security Administration notified her that it was terminating her benefits after having concluded, upon review of her medical treatment, that she was no longer disabled and, thus, was able to return to work. The letter also informed her of her right to appeal the ruling.
The SSA's termination of disability benefits is consistent with the conclusion that she is not in a position which would prevent her from obtaining gainful employment. Therefore, there was no cause to revisit the issue of spousal support.
It is ordered that the appellee recover from appellant his costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, P.J., CONCUR; MICHAEL J. CORRIGAN, J., CONCURS IN JUDGMENT ONLY WITH SEPARATE CONCURRING OPINION.