**KRANTZ, Trustee, Appellant,**

v.

**SCHWARTZ et al., Appellees.**

[Cite as *Krantz v. Schwartz* (1992), 78 Ohio App.3d 759.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 59973.

Decided March 23, 1992.

*Schwartz & Krantz, Howard J. Krantz* and *Mesch Epstein,* for appellant.
*Leonard Wolkov* and *Lynn L. Moore,* for appellees.

HARPER, Judge.

Plaintiff-appellant, Morton Krantz, trustee, appeals from an order of the Cuyahoga County Court of Common Pleas dismissing his action. The dismissal stemmed from a violation of Loc.R. 21.1 of the Common Pleas Court of Cuyahoga County and insufficient evidence on the issue of damages.

## I

Morton Krantz entered into a purchase agreement with defendants-appellees, PZG Investment ("PZG") and its general managing partner, Mark Schwartz, on December 24, 1987. Pursuant to the agreement, Krantz was to purchase an apartment complex in North Olmsted, Ohio called the Delmere Arms for $2.7 million. The complex consisted of five apartment buildings, two garage buildings and a cabana building for the pool. Defendant-appellee Ostendorf–Morris ("Ostendorf") served as the listing and selling broker with

one of its employees, defendant-appellee, Richard Katz, serving as the listing and selling agent. Katz was also a limited partner in PZG. The closing of the transaction occurred on April 18, 1988.

Krantz filed an action in the Court of Common Pleas of Cuyahoga County in July 1988. In January 1990, Krantz filed an amended complaint as trustee for K & G Investments, an Ohio general partnership. He complained that the appellee sellers and real estate agent and broker fraudulently failed to disclose and fraudulently misrepresented the condition of the roofs of the apartment buildings.

A final pretrial was held on February 1, 1990. Appellant at this time provided appellees with an appraisal of the subject property which was written by Jack McParland on May 20, 1989, on behalf of Metropolitan Savings Association, appellant's lender. Appellant also provided answers to PZG's Interrogatories in which he identified McParland as an expert witness. McParland's opinion as an expert witness was to include the value of the apartment complex before and after the discovery of the roof problems. Ostendorf and Katz partially responded to the notice of the expert witness by requesting of appellant when McParland would be available for deposition.

However, on February 15, 1990, appellant informed appellees that McParland would not be called as an expert witness at trial. Appellant intended to identify a new expert in a few days.

Rather than identify a new witness, appellant informed Ostendorf and Katz on February 28, 1990 that McParland was in fact going to be subpoenaed as a witness. Ostendorf and Katz also received McParland's March 1, 1988 appraisal report. Appellant's intent to call McParland as an expert witness was confirmed in his March 29, 1990 witness list.

The case proceeded to trial on April 2, 1990. On that day, all defendants-appellees filed a joint motion *in limine* and Ostendorf and Katz filed a motion *in limine* as to plaintiff-appellant's trial witnesses. The case was continued until May 14, 1990, on which date the trial court heard the motions. The court granted appellees' motion *in limine* precluding appellant's expert from testifying, precluding appellant from presenting evidence on the cost of repairing the property, and precluding appellant-owner from testifying as to what he would have paid for the property had he known of the buildings' condition. As a result, the trial court dismissed the action because of appellant's inability to prove damages.

This appeal followed and for the reasons that follow, the trial court's rulings are affirmed.

## II

Appellant's first assignment of error provides:

"The trial court erred in granting the appellees' motion *in limine* precluding the appellant's expert from testifying on the issue of the value of the real property without the defect and with the defective roofs and dismissing appellant's case."

The trial court found that appellant failed to provide opposing counsel with an expert report, and, therefore, appellant was precluded from offering expert testimony at trial. Appellant argues that the trial court erred in this ruling since appellees received an adequate expert report and notice of the expert's testimony, *viz.,* McParland's initial appraisal report, a letter wherein McParland states he would have reduced his appraisal had he known of the roof problems, and copies of repair estimates. Appellant thus asserts that these combined documents clearly reflected McParland's opinion as to the market value of the real property at the time of the purchase as well as the market value of the property after disclosure of the defects.

Courts are empowered to adopt rules regarding the exchange of expert reports of witnesses to be called at trial. Civ.R. 16. Loc.R. 21.1 of the Court of Common Pleas of Cuyahoga County, General Division, was so adopted and provided in pertinent part:

"(B) A party may not call an expert witness to testify unless a written report has been procured from said witness. It is counsel's responsibility to take reasonable measures, including the procurement of supplemental reports, to insure that each such report adequately sets forth the expert's opinion. However, unless good cause is shown, all supplemental reports must be supplied no later than thirty (30) days prior to trial. The report of an expert must reflect his opinions as to each issue on which the expert will testify. An expert will not be permitted to testify or provide opinions on issues not raised in his report.

"(C) All experts must submit reports. If a party is unable to obtain a written report from an expert, counsel for the party must demonstrate that a good faith effort was made to obtain the report and must advise the court and opposing counsel of the name and address of the expert, the subject of the expert's expertise together with his qualifications and a detailed summary of his testimony. * * * The Court shall have the power to nevertheless exclude testimony of the expert if good cause is not demonstrated."

Appellant first informed appellees of his intent to call McParland as an expert witness on February 1, 1990. McParland was withdrawn as an expert

witness on February 15, 1990. Appellant then forwarded a letter to appellees on or about February 28, 1990 in which it was stated:

"Enclosed please find a photostatic copy of the appraisal of the Delmere Arms Apartments prepared by Jack McParland. We intend to subpoena Mr. McParland at the trial of the within matter to testify as to this document as well as the letter to attorney Krantz dated May 20, 1989."

The letter referred to by appellant which was written by McParland reads as follows:

"As per your request, I have reviewed my appraisal of the above-captioned property as well as my field notes etc. The appraisal of this property was made on an 'as is' basis with the assumption that there were no latent defects present. We so [sic] no indication of roof problems in the units we were permitted to inspect. My recollection and notes from the inspection do not indicate any information from the owner's representative with regard to the need for roof replacement.

"If the roofs are indeed in need of significant repair work as you have indicated and if this information had been made available to us at the time of the appraisal, our appraisal would have been reduced by the amount of the cost to cure this defect. As an alternative, we may have appraised the property as if the repairs were made and the lender would have required the seller to make the repairs prior to making the loan.

"I trust you will find this reply satisfactory. If you have any additional question concerning this matter, please contact us at any time."

However, appellant never referred to McParland as an expert witness. At this stage of the action, appellees were under the impression that appellant was to seek an expert witness different from McParland.

Appellees did not learn of appellant's using McParland as an expert witness until March 29, 1990 when appellees received an updated witness list. The case was called to trial just four days later on April 2, 1990, at which time the discovery time had passed.

The record thus reveals noncompliance with Loc.R. 21.1 on behalf of appellant. Appellant not only failed to timely notify appellees of his expert witness, but no expert report was provided to appellees. McParland's appraisal and subsequent letter does not state the market value of the property as represented and the actual value as it existed at the time of the signing of the purchase agreement. Although McParland generally stated that his original appraisal would have been affected by knowledge of defects, his letter falls short of constituting an expert report.

Trial courts have discretion to determine whether parties are in compliance with Loc.R. 21.1, and their orders will not be reversed absent an affirmative showing of an abuse of discretion. *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313, paragraph one of the syllabus; *Furcello v. Klammer* (1980), 67 Ohio App.2d 156, 21 O.O.3d 454, 426 N.E.2d 187, paragraph one of the syllabus. Here, appellant failed to adequately serve appellees with notice of his expert witness and to serve appellee with an expert report pursuant to Loc.R. 21.1. The trial court thus did not abuse its discretion in barring this expert and appellant's first assignment of error is overruled.

### III

Appellant, in his second assignment of error, asserts that:

"The trial court erred in precluding the appellant from presenting evidence on the cost of repair as an alternate measure of damages and dismissing appellant's case."

Appellant complained of fraud on behalf of appellees in a real estate transaction. The measure of damages is the difference between the actual value of property in 1987 and the value as represented at that time, *i.e.*, with non-defective roofs. *Molnar v. Beriswell* (1930), 122 Ohio St. 348, 171 N.E. 593; see, also, *Harper v. Lachman* (Oct. 11, 1990), Cuyahoga App. No. 57455, unreported, 1990 WL 151650.

Appellant urges this court to adopt a different measure of damages, the cost of repair. Appellant cites *Lyons v. Orange* (May 4, 1982), Montgomery App. No. CA 7566, unreported, and *Burgio v. Looks* (Sept. 19, 1980), Erie App. No. 42846, unreported, for this proposition. These cases accepted evidence of cost of repair in homeowner cases as proof of the difference in value. This court, in light of *Molnar*, refuses to extend a so-called cost of repair rule to a commercial transaction which was entered into by an experienced real estate investor.

Appellant's second assignment of error is overruled.

### IV

For his third assignment of error, appellant contends that:

"The trial court erred in precluding the appellant, as owner, from testifying as to what he would have paid for the property had he known the true condition of the building and dismissing appellant's case."

The trial court properly ruled that appellant's testimony, as owner of the subject real property, would be insufficient on the issue of damages. There is

no doubt that an owner could offer an opinion as to the market value of his real property. *Bedard v. Protetch* (1955), 5 O.O.2d 277, 151 N.E.2d 773; 31A American Jurisprudence 2d (1989), Expert and Opinion Evidence, Section 337; Wigmore, Evidence (3 Ed. Chadbourn Rev. 1970), Section 714. Appellant, however, was to be called to testify as to the value of the property as represented and the value of the property as it existed at the time of purchase to establish the measure of damages in a fraud action. Such an opinion would exceed the allowable limits.

Accordingly, appellant's third assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

FRANCIS E. SWEENEY, P.J., and PATTON, J., concur.