JOURNAL ENTRY and OPINION
{¶ 1} The domestic relations division of the court of common pleas granted Joanne and Edwin Hissa a divorce on grounds that they had lived separate and apart for more than one year. Being dissatisfied with numerous elements of the divorce decree relating to the valuation and division of marital assets, both parties have appealed.
 {¶ 2} A magistrate conducted the trial and made comprehensive findings of fact. The parties were married in 1985. Their two children were born in 1986 and 1988. At the time of the trial, Edwin worked as an orthopedic surgeon; Joanne worked part-time as a nurse, but primarily remained at home. The magistrate found that Edwin's income should be set at $280,000 per year; and that Joanne had an annual earning capacity of $21,200, considered as part-time employment over twenty-four hours per week at a rate of $17 per hour. The magistrate valued Edwin's practice at $553,000. The magistrate found that the marital residence had no equity, as the outstanding mortgages exceeded the current value of the house. The magistrate ordered spousal support in the amount of $4,000 per month and child support in the amount of $2,500 per month. Finally, the magistrate ordered Edwin to pay $25,000 in attorney fees. An equal division of marital property resulted in an award of $452,385 to each party. The court approved the magistrate's decision over the objections of both parties.
 THE APPEAL I {¶ 3} The first issue raised by Edwin concerns the court's decision to exclude his expert report on ground of being untimely filed.
 {¶ 4} The relevant discovery deadlines were set on January 5, 1999 in the following journal entry:
 {¶ 5} "IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that all discovery in this case, including valuation of the Defendant's business, shall be completed on or before April 1, 1999.
"* * *
 {¶ 6} "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that on or before April 10, 1999 counsel for both parties shall file with the Court the written report of any expert expected to testify. A party may not call an expert witness to testify unless a written report had been procured from the witness and provided to opposing counsel and the court by said date."
 {¶ 7} Edwin filed two expert reports on April 9, 1999: one by King Associates, the other by Cohen Company. The Cohen 
Company report contained the phrase "PRELIMINARY AND TENTATIVE" in large print at the top and bottom of each page.
 {¶ 8} At trial, Joanne presented the testimony of an accountant who valued Edwin's practice. On cross-examination of the accountant, Edwin tried to question the accountant by using his own copy of the Cohen Company report.
 {¶ 9} Joanne objected on grounds that the Cohen Company report had not been submitted to her in accordance with the court's discovery schedule for expert reports. Unlike the bound and finished report used by Edwin's counsel, the copy Joanne had been served with, like the copy submitted to the court on April 9, 1999, contained the phrase "PRELIMINARY AND TENTATIVE" on each page and was not spiral bound. Joanne's counsel represented to the court that his office did not receive the report until April 12, 1999, two days after the deadline. Edwin said that there were no material differences between the separate copies, other than the deletion of the "PRELIMINARY AND TENTATIVE" language on each page and the binding.
 {¶ 10} The magistrate considered argument on the matter and issued the following ruling:
 {¶ 11} "The reason that I put in my Magistrate's order that the expert reports had to be filed with the court is so this would not be an issue, and I do not need to rely on either lawyer about who said what, who did what. I would have a pleading filed with the court to show when the expert reports were done."
 {¶ 12} When Joanne's counsel mentioned that he did not receive the Cohen Company report until April 12, 1999, the magistrate said, "I would note [the cover letter to the Cohen Company report] is addressed April 6th, 1999, so I don't know how it could have been received by your office until some date after that." The magistrate went on to forbid Edwin from asking Joanne's expert any questions about "the reports that could not have been prepared until after the discovery cut-off date."
 {¶ 13} Loc.R. 21.1 of the Court of Common Pleas of Cuyahoga County states:
 {¶ 14} "A party may not call an expert witness to testify unless a written report has been procured from the witness and provided to opposing counsel. * * * The report of an expert must reflect his opinions as to each issue on which the expert will testify. An expert will not be permitted to testify or provide opinions on issues not raised in his report."
 {¶ 15} Exclusion of the expert's testimony or opinion can be a permissible sanction for failure to abide by Loc.R. 21.1. See Paugh Farmer, Inc. v. Menorah Home for Jewish Aged (1984), 15 Ohio St.3d 44. If the court does impose a sanction for failure to comply with an order to exchange expert reports, we review the imposition of the sanction for an abuse of discretion. See Nakoff v. Fairview General Hospital (1996),75 Ohio St.3d 254, 256-257; Krantz v. Schwartz (1992), 78 Ohio App.3d 759,764.
 {¶ 16} The court's January 5, 1999 journal entry established two dates: the April 1st discovery cut-off and the April 10th deadline for submission of expert reports on the valuation of Edwin's practice. There is no question that Edwin submitted an expert report to the court on April 9, 1999, albeit in a form that suggested it was not in final form. Nevertheless, our comparison of the filed report and that attempted to be used in court show no material differences whatsoever. True, the report that Edwin tried to use in court was a finished copy that did not bear markings that it was "tentative and preliminary." But that difference was cosmetic only. The magistrate made no effort to compare the two reports, even though Edwin's counsel clearly stated that the reports were identical. Even a cursory inspection of the two documents would have convinced the magistrate of their sameness.
 {¶ 17} Joanne argues that she did not receive the Cohen 
Company report until April 12, 1999, in violation of the court's order that it be submitted on April 10, 1999. A look at a calendar shows that April 10, 1999 fell on a Saturday. Civ.R. 6(A) says that when the filing date falls on a Saturday, Sunday or holiday, the event period does not expire until the next day which is not a Saturday, Sunday or holiday. In this case, the next date that would not have been a Saturday, Sunday or holiday was the following Monday, which fell on April 12, 1999. Edwin did not violate the court's April 10th deadline for submitting his report to opposing counsel.
 {¶ 18} The magistrate seemed to confuse the discovery cut-off date with the deadline for submitting expert reports. Noting that the cover page of the Cohen Company report had an April 6, 1999 date, the magistrate concluded that the report could not have been received by Joanne's counsel until after that date.
 {¶ 19} All of that is true, but irrelevant. The court's discovery cut-off date is not the same thing as a filing date for submission of expert reports. A discovery cut-off date is the final date on which discovery may be sought; for example, no depositions may be taken after the cut-off date. A deadline for submission of expert reports is a different animal. The interim between the discovery cut-off date and the date on which expert reports are due is designed to give the parties time in which to prepare and make their filings. There is no question that Edwin filed the Cohen Company report in a timely fashion, having done so with the court on April 9th for an April 10th deadline. The magistrate's reference to the April 6, 1999 cover letter date of the Cohen Company report was irrelevant.
 {¶ 20} Joanne incorrectly argues that Edwin's failure to proffer the actual report into evidence bars him from asserting this claim on appeal. A proffer is unnecessary when the evidence is apparent from the record. See Evid.R. 103(A), Birath v. Birath (1988), 53 Ohio App.3d 31. We have the version of the report that was filed with the court, as well as the version that Edwin sought to use in his cross-examination of Joanne's expert. The magistrate marked the trial copy as an exhibit. This gives us the opportunity to conduct our own independent review of the reports, making it unnecessary for Edwin to make a proffer.
 {¶ 21} Having established that the court acted unreasonably by excluding the report, we must consider whether that action prejudiced Edwin. The magistrate's decision effectively prevented Edwin from offering any evidence of the value of his medical practice. When discussing the value of the practice, the magistrate only cited to the evidence offered by Joanne's expert, and took his valuation of the practice at face value, less an asset loan receivable from Edwin to the practice. Joanne's expert valued the practice at $650,000, while Edwin's expert would have placed a value of approximately $330,000. The difference was significant and affected the entire division of marital assets.
 {¶ 22} There would have been no prejudice to Joanne in permitting Edwin to use the report. Joanne's counsel admitted that he had seen the report, and her expert likewise said that he had seen the report prior to taking the witness stand. She can make no colorable argument that she lacked preparedness for trial.
 {¶ 23} Moreover, the record shows that just after the magistrate excluded the report, she adjourned trial for the day and did not reconvene trial for eleven months. Even had the report not been timely submitted to Joanne's counsel, there can be no doubt that eleven months would have permitted sufficient time for preparation.
 {¶ 24} We therefore find the court acted arbitrarily and unreasonably by affirming the magistrate's decision to exclude Edwin's valuation of the practice. An abuse of discretion having been shown, we sustain the first assignment of error. This disposition necessarily moots consideration of any assignments of error relating to the division of marital property, as any award the court made would now include a suspect base figure for the value of the practice. Accordingly, Edwin's second assignment of error relating to the actual value of the practice and Joanne's second, third, fourth and seventh cross-assignments of error are moot.
 II {¶ 25} The court determined that Edwin's gross income was $280,000 for purposes of calculating his support obligations. Edwin maintains this figure is too high based on proof that his income had declined precipitously in the past two years and argues that his gross income should have been determined to be $165,124. Joanne argues the opposite — that the court's income determination was too low and that the magistrate should have determined Edwin's income to be closer to the $356,250 average income he received in a five-year period of time.
 {¶ 26} A determination of gross income for support purposes is a factual finding that we review to see if supported by some competent, credible evidence. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80; Fallang v. Fallang (1996), 109 Ohio App.3d 543. Neither party makes a compelling case to show that the court erred by adopting the magistrate's decision.
 {¶ 27} Coloring these assignments of error is the magistrate's finding that conditions within the medical provider market have changed adversely for Edwin. Edwin testified that consolidation within the hospital industry brought about more competition, and as a result the number of surgeries that he performed in a year dropped from a high of around 450 in 1997 to about 350 surgeries in 1998 and 1999. Moreover, Edwin said that Medicare only reimbursed him for thirty percent of the billed procedure.
 {¶ 28} The magistrate found that these conditions had changed more than Joanne thought, but less than Edwin thought. And although finding it credible that Edwin's income had decreased, the magistrate rejected the amount claimed by Edwin: "[t]o suggest that Defendant's income from his practice went from $384,000 in 1997, the year of the filing of the divorce, to $177,000 in 1999, is not credible." The magistrate noted that she had "no confidence in the accuracy of" Edwin's reported 1999 income, particularly since he failed to include a Schedule C listing of ordinary business expenses that were deducted from his gross income to arrive at net income.
 {¶ 29} Neither party has carried the rather large burden on appeal of showing how the court erred by approving the magistrate's decision. The evidence left the magistrate in the position of having to create her own number for Edwin's gross income. The number she chose was somewhere between the income figures urged by the parties. While the court is not permitted to choose a number at random, there is competent, credible evidence to support the determination of Edwin's income to be $280,000 annually.
 {¶ 30} Edwin also claims that the magistrate incorrectly considered "phantom" income of $145,000 which inflated his 1998 gross income to $287,550. Edwin claims the $145,000 was a one-time loan payback to the practice.
 {¶ 31} Regardless whether Edwin's 1988 income was distorted due to a one-time loan payment to the practice, the magistrate found it incredible that Edwin's income had dropped by roughly two-thirds in two years. And the magistrate would have been entitled to find it not coincidental that this alleged drop in income occurred during the period in which the divorce action was pending. Given these facts and conclusions permitted by these facts, we cannot say that the court erred by approving the magistrate's computation of Edwin's income.
 III {¶ 32} At the time of the divorce action, Joanne worked part-time as a registered nurse, earning $17 per hour. Joanne testified that she only works part-time so as to be available for the children, both of whom have shown adverse reactions to the divorce proceedings. The magistrate imputed to Joanne yearly income of $21,200 based on employment of twenty-four hours per week. Edwin argues that for child support purposes, Joanne's income should have been imputed based on a full-time work schedule, and that Joanne's claims that she remains home for the emotional support of the children are baseless since even the magistrate found as a matter of fact that "no expert evidence was presented to demonstrate that either of the children suffers from any unusual physical or emotional condition."
 {¶ 33} In Badovick v. Badovick (1998), 128 Ohio App.3d 18, 23, we stated:
 {¶ 34} "In cases where the court is asked to impute income, it must follow a two-step process. First, the lower court must find that a party is voluntarily unemployed or underemployed before it can impute any income to that party. Second, once a party is found to be voluntarily unemployed or underemployed, the potential income to be imputed to that party must be determined in accordance with the considerations listed in R.C. 3113.215(A)(5)(a). Leonard v. Erwin (1996), 111 Ohio App.3d 413, 417; Madden v. Madden (Oct. 30, 1997), Cuyahoga App. No. 71302. Before computing child support, the court must determine the income levels of the respective parents. If a parent is underemployed or unemployed, the court must consider `potential income;' that is, income that the parent would have earned if he or she had been `fully employed.' R.C. 3113.215(A)(5)(a). That amount is to be determined by (1) the parent's employment potential and probable earnings based on the parent's recent work history, (2) job qualifications, and (3) the prevailing job opportunities and salary levels in the community in which the parent resides. Rock v. Cabral (1993), 67 Ohio St.3d 108. Whether a parent is `voluntarily underemployed' within the meaning of R.C. 3113.215(A)(5), and the amount of `potential income' to be imputed to a child support obligor, are matters to be determined by the trial court based upon the facts and circumstances of each case. The determination will not be disturbed on appeal absent an abuse of discretion. Id. at 110; Marsh v. Marsh (1995), 105 Ohio App.3d 747, 750. We have held that the factors set forth in Rock
are mandatory — the court's failure to consider all three factors will constitute an abuse of discretion. See Dixon v. Dixon (Mar. 9, 1995), Cuyahoga App. No. 66997."
 {¶ 35} The magistrate did not find that Joanne was voluntarily unemployed or underemployed as a result of working only part-time. The magistrate did point out that there had been no specific evidence showing that the children suffered from any "unusual" emotional condition, but the use of the word "unusual" is telling in these circumstances. The magistrate could reasonably find that the children were being adversely affected by the divorce to the point where closer parental supervision was required, but not to the point where professional help was necessary.
 {¶ 36} We also reject Edwin's argument that the magistrate should have imputed a higher rate of hourly pay to Joanne based on what she earned five years earlier. Regardless what Joanne made five years ago, her current position was the more relevant for determining her current income level, particularly in light of the magistrate's finding that Joanne's reasons for working part-time were "meritorious."
 IV {¶ 37} Along with ordered spousal and child support, the court ordered Edwin to pay $2,000 per month as part of the division of marital assets. In the aggregate, those ordered payments total $8,500 per month, for a total of $102,000 per year. Edwin complains that this total exceeds his available income, after taxes, based on his claim that he only earned $176,961 in 1999, not the $280,000 imputed to him by the court.
 {¶ 38} The short answer is that the court imputed to Edwin income of $280,000 per year. We previously found that the magistrate's decision to impute that amount to Edwin was supported by competent, credible evidence, and will not revisit that issue. Moreover, Edwin concedes that the court did reserve jurisdiction to modify the support order after the year 2002. As we noted, the magistrate's decision could be read as indicating a suspicion that Edwin might have deflated his income during the divorce proceedings. At the very least, the magistrate did not find Edwin's financial data for tax year 1999 credible. By reserving jurisdiction to modify the spousal support order starting in 2002, the court left open the possibility that Edwin's lowered income may accurately reflect new realities within the medical provider market. Finally, we reject Edwin's contention that the reservation of jurisdiction to modify spousal support beginning in 2002 is "two years too late." The two year period would be sufficient to establish the trend in Edwin's income, whether up or down. We are confident that a trend in the income, if developed, would be properly considered by the court in a future motion for modification of support. The appeal is affirmed in part, reversed and part and remanded.
 THE CROSS-APPEAL I {¶ 39} At the time the divorce action commenced, the parties were involved in building an addition to the marital residence. The magistrate found that "a large portion of the home is a shell with no plumbing, electric wiring, dry wall or floor covering" and that it would cost about $487,375 to complete construction. Current liens against the house totaled $580,000, a figure that exceeded the actual equity the parties had in the house. Attempts by Joanne to sell the house in its unfinished condition were fruitless. The magistrate decided that the house should be awarded to Edwin, "in the hope that he might be able to find a buyer for the home." Joanne complains that the court erred by failing to order the sale of the marital residence since Edwin had listed the value of the house at $1 million in a bankruptcy petition he filed.
 {¶ 40} Joanne's argument is somewhat mystifying, as she testified in court that she tried to sell the house but could not find any realtor willing to list the house for sale in its unfinished condition. In fact, the magistrate noted that Joanne testified that she herself would not purchase the home in its current condition. It is difficult to comprehend just how the house could be sold when Joanne herself was forced to admit that her efforts at selling it had been a failure.
 {¶ 41} Joanne also argues that the parties agreed prior to trial that they would sell the house, and that the court's decision to award the asset to Edwin acted improperly to modify the pretrial agreement between the parties.
 {¶ 42} The court is obligated to identify which assets are marital in nature and then divide those assets in an equitable manner. See R.C.3105.171; Dabis v. Dabis (July 9, 1998), Mercer App. No. 10-97-17. There is no question that the house was a marital asset. As such, it was subject to disposition by the court as part of the divorce decree. In other words, once the sale of the house became a practical impossibility, the court was obligated to make some disposition of the asset in order to divide the marital estate.
 {¶ 43} We also note that the agreement between the parties was to sell the house and divide the proceeds equally. By Joanne's own admission, the house could not be sold at the time of trial because the construction remained incomplete. And given what the parties had testified to in relation to their equity stake in the house, there can be no question that there would have been no proceeds to divide between them once the divorce became final. Finally, the lack of liquidity resulting from the division of marital assets made it highly improbable that either of the spouses would have the ability to finance the rest of the construction. With these uncontroverted facts, the court did not violate the terms of the agreed judgment entry when it awarded the house to Edwin.
 II {¶ 44} Joanne claims the court erred by failing to hold Edwin accountable for misappropriating $25,000 from the marital estate for his personal use at the expense of her and the children. She says that Edwin admitted that he took the money out of a joint account just before he took a trip to Germany, and in doing so, left her and the children without funds to pay utilities and other necessary expenses. In addition, she claims Edwin violated every support order, wasted marital assets and otherwise engaged in financial misconduct. Joanne believes the court should have ordered a distributive award to compensate her for Edwin's misconduct.
 {¶ 45} A distributive award is "any payment or payments, in real or personal property, that are payable in a lump sum or over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property and do not constitute payments of spousal support, as defined in section 3105.18 of the Revised Code." R.C.3105.171(A)(1). A distributive award may be granted if a spouse has engaged in financial misconduct, including but not limited to, the dissipation, destruction, concealment or fraudulent disposition of assets. R.C. 3105.171(E)(3) provides that R.C. 3105.171(F) lists a number of factors that the court must consider when it orders a distributive award: (1) the duration of the marriage, (2) the assets and liabilities of the parties, (3) the desirability of awarding the marital home to the spouse with custody of the children, (4) the liquidity of the property to be distributed, (5) the economic desirability of retaining intact an asset or an interest in an asset, (6) the tax consequences of the property division, (7) the costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property, (8) any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses, and (9) any other factor that the court expressly finds to be relevant and equitable. The decision whether to make a distributive award, like any other disposition of marital property, is discretionary with the court, subject to a review for an abuse of that discretion. Bisker v. Bisker (1994),69 Ohio St.3d 608, 609.
 {¶ 46} Despite Joanne's certainty about the timing of when Edwin withdrew the $25,000 from the joint account, the record is far more ambiguous. It is clear that he withdrew that amount, and it is clear that he went to Germany. What is not clear is that he used the $25,000 to go to Germany. Edwin specifically denied using the money for the Germany trip. Joanne tried to impeach this testimony with Edwin's prior deposition testimony that he received the check for $25,000 just prior to leaving for Germany. Edwin said that he could not recall the specific question being asked in deposition. When Joanne's counsel pressed Edwin for an answer, the magistrate sustained counsel's objection and ordered the parties to address issues relating to Edwin's obligations under the court's temporary support order. This testimony does not show the type of certitude necessary to find that the court abused its discretion for failing to find that Edwin engaged in misconduct.
 {¶ 47} We agree with Edwin that other allegations concerning his failure to abide by the temporary support order were addressed in other ways by the court, thus obviating the necessity for a distributive award. Edwin correctly points out that the court previously ordered that $57,000 from an investment account be used to pay Edwin's temporary support obligations. The magistrate later decided that the $57,000 would be charged against Edwin's share of the marital estate. Moreover, the court did find that Edwin failed to comply with the court's temporary support orders and awarded Joanne the attorney fees associated with enforcing those orders. Had the court intended to penalize Edwin for his contempt in failing to abide by the temporary support orders, it would have done so at that time. Its failure to do so does not rise to the level of an abuse of discretion.
 III {¶ 48} Joanne next complains that the court erred in its child support determination. This is, in essence, a rehash of Edwin's argument, with the difference being that Joanne believes the court should have imputed more income to Edwin. To the extent any of the issues raised by Joanne overlap with those previously raised by Edwin, we find them meritless.
 {¶ 49} Joanne does raise an argument that the court failed to consider the extent to which the practice's corporate expenditures for Edwin's personal expenses should be considered as income to Edwin. But she fails to detail exactly what those expenses were and how much was spent on each individual expense. In fact, the section of the transcript that she cites to (Tr. 322-331) deals with the characterization of income from sources other than those appearing on Edwin's Internal Revenue Service Form 1099's. The failure to identify the parts of the record that support an argument leads us to disregard this error. See App.R. 12(A)(2).
 IV {¶ 50} Joanne complains that the court's spousal support order is insufficient in both amount and duration. She cites to the parties' disparity in income and earning ability, along with several other factors that she believes would merit an increase in her spousal support.
 {¶ 51} R.C. 3105.18(C)(1) requires that the court consider all the following factors in determining whether spousal support is reasonable and appropriate:
 {¶ 52} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 [3105.17.1] of the Revised Code;
 {¶ 53} "(b) The relative earning abilities of the parties;
 {¶ 54} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 55} "(d) The retirement benefits of the parties;
 {¶ 56} "(e) The duration of the marriage;
 {¶ 57} "(f) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 58} "(g) The standard of living of the parties established during the marriage;
 {¶ 59} "(h) The relative extent of education of the parties;
 {¶ 60} "(I) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 61} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 {¶ 62} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 63} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 64} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 65} "(n) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 66} The parties enjoyed a standard of living commensurate with Edwin's income. They belonged to a country club, took frequent vacations and sent their children to expensive private schools. While the court must consider the lifestyle enjoyed by the parties when deciding the amount of spousal support, a spouse is not entitled as a matter of law to continue the luxurious lifestyle after the divorce. Simoni v. Simoni
(1995), 102 Ohio App.3d 628, 637. Our determination is whether the award of spousal support is reasonable and appropriate under the circumstances.
 {¶ 67} There is an admitted disparity in income between the parties, a fact the magistrate acknowledged when she noted that Edwin earned eight times as much as Joanne. Based on this fact, the magistrate ordered that Edwin pay to Joanne spousal support of $4,000 per month until she died, remarried or cohabitated. Taken together with the child support obligation, the magistrate found that Joanne would have $85,000 per year to meet her living expenses. We believe this sum is sufficient under the circumstances to continue to support her in a manner consistent with the lifestyle she enjoyed during the marriage. Joanne makes no specific argument as to which perks of the lifestyle she enjoyed during the marriage would be missing after the marriage. Absent a more concrete showing of how her lifestyle would be diminished on $85,000 per year, we find the court did not abuse its discretion when deciding the amount of spousal support.
 V {¶ 68} The court awarded Joanne attorney fees of $25,000, far less than the $94,710 that she requested. Joanne argues that the amount of fees she requested were dictated in large measure by her efforts to force Edwin to comply with pretrial support orders, and that the court's failure to compensate her for Edwin's contemptuous conduct constituted an abuse of discretion.
 {¶ 69} R.C. 3105.18(H) states:
 {¶ 70} "In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal, any proceeding arising from a motion to modify a prior order or decree, and any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees."
 {¶ 71} Some litigants in the domestic relations division mistakenly believe that attorney fees have become a mandatory component of a divorce decree. R.C. 3105.18(H) is phrased in discretionary language: the court "may" award attorney fees. We categorically state that the statute does not require the court to award attorney fees in every case. And when the court does award attorney fees, it seems to us to be the rare case in which the court abuses its discretion by not ordering enough attorney fees to suit a party.
 {¶ 72} The magistrate found that attorney fees were warranted because Joanne was required to protect her interests in Edwin's bankruptcy petition and forced to bring legal action to force Edwin to comply with support orders issued by the court. The magistrate recommended that Edwin pay reasonable attorney fees that arose as a result of that act of contempt.
 {¶ 73} In considering the reasonableness of the fees, the magistrate noted that Joanne's counsel claimed an hourly rate of up to $275 per hour, a figure that the magistrate found "at the high end of the range of customary fees" for an attorney practicing within the domestic relations division. The magistrate also concluded that the claimed fees constituted twenty percent of Joanne's share of the marital estate, a figure that she deemed to be too high. Additionally, the magistrate concluded that Joanne could bear a portion of her own attorney fees from her spousal support, child support and marital property award that would give her a net income of approximately $109,000 per year.
 {¶ 74} All these considerations convince us that the court did not abuse its discretion by ordering attorney fees in the amount of $25,000. The record shows that the magistrate gave careful consideration to the amount of fees and each party's ability to pay the attorney fees.
 {¶ 75} We approve of the magistrate's thought that attorney fees equaling twenty percent of Joanne's share of the marital estate were too excessive. Joanne received the fees she expended in compelling Edwin's compliance with court orders. Anything else was simply the cost of litigating the divorce case that she filed. The court did not abuse its discretion by approving the magistrate's findings.
 VI {¶ 76} One of the marital assets at issue was a potential judgment pending in a lawsuit filed by Joanne against contractors who worked on the marital house. The court ordered that the parties would split the potential proceeds of the suit equally. Joanne objects, claiming that she should be entitled to a full share of the potential proceeds since she prosecuted the lawsuit without any involvement from Edwin. At the very least, she claims that Edwin should have been forced to pay a share of the attorney fees spent on the action.
 {¶ 77} Edwin has informed us that this argument is moot because that action has been dismissed with prejudice. We have confirmed this fact with our own review of the docket in that case. Because Joanne makes no argument in reply as to how there would be any proceeds from a case that has been dismissed with prejudice, we find this assignment of error to be moot.
 VII {¶ 78} Joanne's final argument is that the court erred by refusing to force Edwin to pay the cost of the childrens' private education even though he had failed to comply with a pretrial court order that he pay those costs. The court held that Edwin was not obligated to pay any tuition for the 2000-2001 school year or any other year thereafter. Joanne claims that Edwin's contemptuous failure to pay the tuition nearly resulted in the children being expelled from school.
 {¶ 79} To the extent that Joanne complains about Edwin's failure to fulfill pretrial support orders, we reiterate that the court did hold him contempt and awarded Joanne $25,000 in attorney fees as a result of Joanne's action to enforce those orders.
 {¶ 80} As to the failure to require the tuition, the record is clear that Edwin will be paying $30,000 per year in child support. Given the magistrate's acknowledgment that Edwin's income had fallen in recent years (although perhaps not to the extent argued by Edwin) the magistrate could reasonably have concluded that Edwin could not afford to pay the private school tuition in addition to his spousal and child support obligations. We see nothing in the record to convince us that this constituted an abuse of discretion.
Judgment affirmed in part; reversed in part and remanded.
This cause is affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.
Costs to be divided equally between plaintiff-appellee/cross-appellant and defendant-appellant/cross-appellee.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, J., and TERRENCE O'DONNELL, J., CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R.22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).